UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STEPHEN T. MITCHELL,                          :

                        Petitioner,          :

                - v -                :

STATE OF NEW YORK,                            :

                    Respondent.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STEPHEN T. MITCHELL,                          :

                      Plaintiff,           :

                - v -                :          **OPINION**

STATE OF NEW YORK; LETITIA JAMES, in       :          19-cv-3980 (DC) (LB)
her capacity as Attorney General of the State                22-cv-3791 (DC) (LB)
of New York; ERIC GONZALEZ, in his         :          23-cv-4465 (DC) (LB)
capacity as Kings County District Attorney;
and KINGS COUNTY DISTRICT                  :
ATTORNEY'S OFFICE,

                                :

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STEPHEN T. MITCHELL,                          :

                      Plaintiff,           :

                - v -                :

CITY OF NEW YORK; PATRICK CAPPOCK,            :
Esq.; and DANIEL MILLER, Esq.,

                    Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES: STEPHEN T. MITCHELL
  Petitioner and Plaintiff *Pro Se*
  461 Central Park West, Apt. 6B
  New York, NY  10025

  LETITIA JAMES, Esq.
  Attorney General of the State of New York
  By: Diane R. Eisner, Esq.
   Assistant Attorney General
    350 Jay Street
    Brooklyn, NY  11201
   Ian Ramage, Esq.
   Assistant Attorney General
    28 Liberty Street
    New York, NY  10005
   Attorney for Respondent and State Defendants

  SYLVIA O. HINDS-RADIX, Esq.
  Corporation Counsel, City of New York Law Department
  By: Inna Shapovalova, Esq.
   Senior Counsel
  100 Church Street
  New York, NY  10007
   Attorney for Eric Gonzalez

CHIN, Circuit Judge:

   On January 28, 2015, following a jury trial, petitioner and plaintiff Stephen

T. Mitchell was convicted in the Supreme Court of the State of New York, Kings County,

of one count of grand larceny in the second degree, in violation of N.Y. Penal Law

§ 155.40(1).  No. 19-cv-3980, Dkt. 20-2 at 410.  The charge concerned Mitchell's

misappropriation of a $70,000 down payment he was holding, in his role as an attorney

and in his attorney escrow account, in connection with a client's real estate sale.  The

court principally sentenced Mitchell to an indeterminate term of two to six years'

imprisonment.  Dkt. 20-3 at 12-13.  The court also entered a civil judgment against Mitchell in the amount of $70,000.  *Id.* at 13.

In these cases, Mitchell alleges that state, county, and city law enforcement officials responsible for his prosecution violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.  He seeks federal habeas corpus relief in the form of an order vacating his conviction and limiting the prosecutors' ability to re-try him.  *See* No. 22-cv-3791, Dkt. 1 at 36; No. 23-cv-4465, Dkt. 1 at 77.  In No. 23-cv-4465, Mitchell also seeks monetary damages.  *See* Dkt. 1 at 76.

On June 26, 2019, proceeding *pro se*, Mitchell first filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the Southern District of New York.  No. 19-cv-3980, Dkt. 2.  After Mitchell's petition was transferred to the Eastern District of New York, he amended it twice and, then, filed the operative petition (the "Petition") on May 18, 2022.  Dkt. 14.  Respondent, represented by the Attorney General of the State of New York, filed its opposition to the Petition on February 15, 2023.  Dkt. 20.  On May 12, 2023, No. 19-cv-3980 was reassigned to the undersigned.

On June 28, 2022, Mitchell filed, *pro se*, the complaint in No. 22-cv-3791, in which he sought "federal habeas corpus relief pursuant to 42 U.S.C. § 1983 in lieu of relief pursuant to 28 U.S.C. § 2254(d)(1) and 28 U.S.C. § 2254(d)(2)."  Dkt. 1 at 3.  Defendants State of New York and Letitia James, the Attorney General (together, the "State Defendants"), moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), Dkt.

13, and Defendant Eric Gonzalez, the Kings County District Attorney, indicated that he intended to file a motion to dismiss under Rule 12(b)(6), *see* Dkt. 32 at 1, but has not done so. On December 9, 2022, the Court consolidated Nos. 19-cv-3980 and 22-cv-3791 because "they share common issues of law and common parties." Minute Order of Dec. 9, 2022. No. 22-cv-3791 was reassigned to the undersigned on July 12, 2023.

On June 16, 2023, Mitchell filed, *pro se*, the complaint in No. 23-cv-4465, which seeks both monetary damages and habeas relief "pursuant to 42 U.S.C. § 1983 in the same manner as if the Plaintiff was successful with a 28 U.S.C. § 2254 application." Dkt. 1 at 76-77. Defendants in No. 23-cv-4465 have not yet entered their appearances. No. 23-cv-4465 was reassigned to the undersigned on July 12, 2023.

For the reasons that follow, No. 23-cv-4465 is CONSOLIDATED with Mitchell's two other cases, the Petition is DENIED, the State Defendants' motion to dismiss in No. 22-cv-3791 is GRANTED, No. 22-cv-3791 is DISMISSED against all other Defendants, and No. 23-cv-4465 is DISMISSED.

## STATEMENT OF THE CASES

### I.    *The Facts*

Mitchell was admitted to the bar of the State of New York in 1988 and was disbarred in July 2010. *See In re Mitchell*, 903 N.Y.S.2d 749 (2d Dep't 2010). At the time of his disbarment, eleven complaints of professional misconduct had been lodged against Mitchell "alleging, *inter alia*, failure to satisfy lawful monetary judgments against

him, escrow violations, and other conduct prejudicial to the administration of justice and adversely reflecting on his fitness to practice law." *Id.* at 750; *see also Mitchell v. Con Edison*, 531 F. App'x 140 (2d Cir. 2013) (summary order) (affirming judgment holding Mitchell in civil contempt and requiring him to pay sanctions and attorney's fees).

The instant three cases all arise out of Mitchell's indictment, trial, and conviction for grand larceny in connection with his representation of some of the descendants of Jacques Montrevil ("Jacques"). The evidence at trial established the following:

Jacques died intestate in 1999, leaving fifteen children. Among them were Jean Montrevil ("Jean"), Nadia El-Saieh ("Nadia"), Gina Montrevil ("Gina"), and Patrick Montrevil ("Patrick"). *See* No. 19-cv-3980, Dkt. 15-3 at 16; Dkt. 20-1 at 60-63, 301. In addition, Jacques left behind a young widow, Marie (also known as Nana) Montrevil ("Marie"). *See* Dkt. 15-3 at 16; Dkt. 20-1 at 60-62, 317. Pursuant to a stipulation executed in March 2006, the Surrogate's Court, Kings County, appointed Marie, represented by attorney Eric Abakporo, as administrator of Jacques's estate. *See* Dkt. 20-1 at 67-69, 316-19, 335. The Surrogate's Court appointed Jean as manager of two of the estate's properties, one of which was located at 3215 Church Avenue, Brooklyn, New York (the "Church Avenue Property"). *Id*. at 324. The stipulation prohibited Marie from making any decision or taking any action regarding the estate without consulting with Jean, the designated spokesperson for Jacques's children. *Id*. at 69.

5

In fall 2006, Jean retained Mitchell as his attorney and directed him to (1) oust Marie as administrator of Jacques's estate and (2) help sell the Church Avenue Property.  *See* Dkt. 20-2 at 17-18.  Jean and Mitchell did not execute a written agreement regarding the scope of Mitchell's representation or the compensation he would receive. *Id.* at 18, 57-58.  Jean believed Mitchell would be paid once he finished his work.  *Id.* at 105.  Mitchell commenced a proceeding in the Surrogate's Court to have Marie removed as administrator and Nadia installed in her place.  *See id.* at 67, 88.  In addition, on November 6, 2006, Mitchell represented Jean in executing a contract (the "2006 Sales Contract") to sell the Church Avenue Property to Stephen Falcone.  Dkt. 20-1 at 908, 911-12.  Marie was not a party to the 2006 Sales Contract.  *See id.*  The purchase price was $700,000.  *Id.* at 912.  Pursuant to the 2006 Sales Contract, Falcone provided a down payment in the form of a $70,000 check whose proceeds were to "be held by the escrow agent Stephen T. Mitchell, as attorney**."** *Id.* at 344.  The contract provided that Mitchell would keep the down payment in his attorney escrow account until either the sale closed or the contract was terminated.  *See* Dkt. 24 at 17.  Mitchell deposited Falcone's check in his escrow account on November 7, 2006.  Dkt. 20-1 at 1009.

The Montrevil family disputed the sale of the Church Avenue Property, which led to additional proceedings in the Surrogate's Court.  Dkt. 20-2 at 204-05.  In 2007, pursuant to a further stipulation, Marie's attorney, Abakporo, prepared a new contract of sale (the "2007 Sales Contract"), to which Marie was a party.  *Id.*  The closing

took place on February 22, 2008.  *Id.* at 27-28.  Jean asked Mitchell to bring to the closing a check for the $70,000 down payment that Mitchell had been holding in his escrow account.  *Id.* at 30.  The transaction closed:  The estate credited the $70,000 down payment to Falcone, and Falcone's attorney paid the balance of the purchase price.  *See* Dkt. 20-1 at 915-16, 943-49; Dkt. 20-2 at 55.  But Mitchell did not turn over the $70,000 down payment at the closing.  Dkt. 20-2 at 29.

When questioned by Jean, Mitchell said he was entitled to retain the funds because Jean was still in the process of removing Marie as administrator.  *Id.* at 31. After the closing, Jean asked Mitchell to send him the check, and Mitchell said he would do so.  *Id.* at 32-34.  On May 9, 2008, Jean and Marie opened two estate accounts into which the proceeds of the sale were to be deposited.  *Id.* at 40-41.  Sometime after that, Mitchell gave Jean a check, drawn on his escrow account and made out to the estate in the amount of $70,000; the check was dated February 20, 2008, *i.e.*, two days before the closing.  *Id.* at 35-37.  Mitchell instructed Jean not to deposit the check until Mitchell gave him the "okay" to do so.  *Id.* at 36.  After waiting to no avail for Mitchell's "okay," Jean attempted to deposit the check, but the bank did not accept it.  *See id.* at 49. Although Jean did not know this at the time, it later emerged that Mitchell had placed a stop-payment order on the check on March 31, 2008, more than a month before he gave the check to Jean.  Dkt. 20-1 at 666-68.

7

Jean fired Mitchell in August 2008.  Dkt. 20-2 at 54.  Mitchell never provided a bill for his services to Jean or the estate, nor did the Surrogate's Court approve the payment of any fee to him.  *Id.* at 57; *see also* Dkt. 20-1 at 383, 426-27.  In the summer of 2008, Jean retained attorney George Bischof to replace Mitchell and represent Jacques's children.  Dkt. 20-1 at 316.  Bischof asked Mitchell to provide an accounting and repeatedly attempted to recover the $70,000 down payment from Mitchell.  *See id.* at 378-80, 386-393.  In response to Bischof's inquiries, Mitchell claimed that he had not been paid for his services and, alternatively, that he had used the money to pay taxes and expenses on another property owned by Jacques's estate.  *See id.* at 380-386.  According to Bischof, Mitchell later asserted that he had permission (but did not say from whom) to use the funds in the escrow account.  *Id.* at 380-81.  Bischof asked Mitchell to provide an accounting and remit any funds that remained in Mitchell's possession, but Mitchell did not do so.  *Id.* at 379.  Mitchell said he had to tend to his own family matters and there had been flooding in his office.  *See id.* at 384, 389-390. After multiple attempts to recover the funds from Mitchell, Bischof told Abakporo that Marie should try to do so.  *Id.* at 405-07, 450.  Abakporo responded that Jean, as property manager, was responsible for recovering the money.  *Id.* at 451.  Accordingly, Abakporo did not take action on Marie's behalf to recover the $70,000.  *Id.* at 455.

In the fall of 2010, Marie stepped down as administrator of Jacques's estate.  *Id.* at 322.  Gina and Patrick became co-administrators and hired attorney

8

William Bronner to represent the estate. *Id.* at 408. Jean turned over to Bronner the $70,000 check Mitchell had given him. *Id.* at 729-730. Like Bischof before him, Bronner repeatedly asked Mitchell to repay the $70,000 but, again, received no reply. *Id.* at 734-37. Bronner then filed a civil complaint in the Kings County Civil Court and reported the matter to the Kings County District Attorney's Office. *Id.* at 737-39.

An investigation by the District Attorney's Office's revealed that, before Mitchell deposited the down payment, his escrow account had a balance of $458.25. *Id.* at 1010. Mitchell was the account holder and sole signatory. *Id.* at 615. He deposited Falcone's $70,000 check on November 7, 2006. *Id.* at 1009. On the same day, he wrote a $65,500 check to Linton Emmy for "CE settlement." *Id.* at 1010-12.[1] Between November 10 and November 21, four transfers totaling $4,800 were made from the escrow account to other accounts controlled by Mitchell, including his operating account and a joint signatory account he held with Cathy E. Clark Mitchell. *See id.* at 615-16, 1013-15. On November 22, $12,000 was transferred into the escrow account from Mitchell's savings account, and on that same date, the escrow account was debited $12,000 in connection with two other transactions. *See id.* at 1014-15. The transfers left $158.25 in the escrow account on November 22. *Id.* at 1015. The investigation also revealed that the $70,000 check Mitchell wrote to the Montrevil estate was not cashed and that Mitchell had placed the stop-payment order on the check on March 31, 2008. *Id.* at 666-68.

---

[1]     The record does not indicate who Linton Emmy is or what "CE settlement" means.

In short, during the relevant period, Mitchell's escrow account never held a balance sufficient to cover the $70,000 down payment. *See id.* at 1019.  The estate never recovered the $70,000 from Mitchell, and Mitchell never provided the estate or the Surrogate's Court a bill or accounting. *See id.* at 749-50.

## II.   *Procedural History*

### A.   *The Indictment and Trial*

On April 20, 2012, a Kings County grand jury indicted Mitchell on one count of grand larceny in the second degree, in violation of N.Y. Penal Law § 155.40(1).  Dkt. 15-4 at 16-17.  A jury trial commenced in January 2015. *See* Dkt. 14 at 10.  Mitchell represented himself, with assigned standby counsel.  Dkt. 20 at 3.  Jean, Bischof, and Bronner testified about their efforts to recover the down payment from Mitchell, and the 2006 Sales Contract, correspondence, and bank records were received into evidence. *See id.* at 5-13.  Marie was not called as a witness, and neither the People nor Mitchell introduced the 2007 Sales Contract into evidence. *See* Dkt. 20-2 at 394-96.[2]

Mitchell did not testify, and he put on no defense case. *See id.* at 158.  Mitchell indicated that he intended to testify that Marie had given him permission to keep the proceeds of the $70,000 check, but the court ruled that such testimony would be hearsay. *See id*. at 128-29, 140-41.  Mitchell objected to the court's ruling and

---

[2]      The stipulation and court order that led to the 2007 Sales Contract were, however, introduced into evidence.

subsequently chose not to testify, after discussing the decision with his standby counsel. *See id.* at 141-42.  After Mitchell rested his case in the jury's presence on January 22, 2015, the court dismissed the jurors for the day, instructing them to return on January 26.  *See id.* at 157-61.[3]  After the jurors departed, the court entertained and denied a motion by Mitchell to dismiss the case following the close of evidence; then, the court immediately proceeded to the pre-charge conference, with Mitchell and standby counsel present.  *See id.* at 161-63.

At the conference, the court denied Mitchell's requests to charge the jury that (1) he had established a claim-of-right defense and (2) they could draw inferences favorable to Mitchell from the fact that Marie did not testify at trial.  *See id.* at 221-24. The court indicated it would charge the jury that if "the People have proven beyond a reasonable doubt, that, the defendant stole the check in this case, it is no defense to the theft that he did work for his clients and/or the estate."  *Id.* at 226.  Mitchell objected to this charge; the court overruled the objection and warned Mitchell that if he were to "intimate[] . . . during your summation, that, the absence of the administrator or the attorney for the administrator [shows] that you had permission to keep the check, I will then instruct the jury that there's no evidence in this case that the defendant had permission or authority to keep the proceeds of the check."  *Id.* at 228.  Mitchell again

---

[3]     The next scheduled trial day was January 23, but at Mitchell's request, the court postponed the start of summations to enable Mitchell to recover fully from an illness he had been suffering.  *See id.* at 142-56.

objected, and the court repeated its admonition: "[I]f I believe you are suggesting

that . . . this record shows that you had permission and authority, I'm going to jump in

and give that charge." *Id.* at 229-32.

         In his summation, Mitchell drew the jury's attention to Marie's absence

from the trial and stated that the People had not proved "beyond a reasonable doubt,

that, I did not have the permission to take or keep the money in question without Marie

Montrevil's testimony." *Id.* at 246.  The prosecutor objected, and as promised, the court

instructed the jury that "as a matter of law, that, there's [no] evidence in this case, that,

the defendant had anyone's permission to keep the check or the proceeds of the check."

*Id.* at 247.  Minutes later, Mitchell repeated his claim:  "The People have a burden to

prove, beyond a reasonable doubt, that, there was no permission or authority in this

case.  And, I submit to you, ladies and gentlemen of the jury, that, they cannot meet that

burden without the person who was the administrator of the estate." *Id.*  Again, the

prosecutor objected, and again, the court repeated its instruction:  "[T]here's no evidence

in this case that the defendant had anyone's permission to keep the check or the

proceeds and you may not speculate as to that." *Id.* at 247-48.  This pattern -- Mitchell's

claim that the prosecution had not proven he did not have permission to keep the check,

the prosecutor's objection, and the court's instruction -- occurred twice more.  *See id.* at

254, 258.  At one point, Mitchell objected to the court's instruction, stating "[t]hat was not

the charge you announced before." *Id.* at 258.  During Mitchell's summation, the court

12

repeatedly sustained other objections, *e.g.*, that Mitchell mischaracterized the evidence, referred to facts not in evidence, misstated the law, and encouraged jury nullification. *See, e.g., id.* at 259-60, 263-65, 270, 276-78.  The court conducted several conferences at sidebar during Mitchell's summation, but the trial transcript records neither who was present at sidebar nor what was said.  *See id.* at 260, 262.

After Mitchell concluded his summation but before the prosecutor began his, the court again instructed the jury that "there's no evidence in this case that $70,000 or any part of that $70,000 was ever paid to the estate" and "defendant had no right, no legal right, to keep the $70,000 check as payment for any services or to hold the check until he was paid.  The defendant had civil remedies available to him to recover [his] compensation for any services rendered."  *Id.* at 279.  Mitchell objected to the court's comments, characterizing them as improper "marshaling [of] the evidence."  *Id.*  The court overruled him, stating, "I'm charging the jury on the law.  You will be qui[et]."  *Id.*  Mitchell continued to object, and the court again instructed him to stop speaking.  *Id.* at 280.

After the prosecutor's summation, the court announced that, due to an inbound snowstorm, the administrative judge for courts in the City of New York had issued an order to close the courts early that afternoon.  The court therefore indicated that it would not charge the jury that day and would postpone further proceedings until January 28, two days later.  *See id.* at 332-33.

13

On January 28, outside the presence of the jury, Mitchell said to the court that "I don't know if Mr. Smallman [Mitchell's standby counsel] spoke to you about my concern for part of the charge. . . . Two days ago, you mentioned that you were going to adjust the charge, because of some[ ]things that were said in summation.  And if that was so, I would have a right to know what it is that you said."  *Id.* at 341.  The court indicated that what it was "referring to is the charge that [I] gave during the trial in regard to fiduciary duty and escrow, the escrow violations.  I will repeat that charge." *Id.* at 341-42; *see also* Dkt. 20-1 at 983-84 (court's earlier charge).  Mitchell responded: "[T]here was one thing that troubled me a great deal and that was the Court, repeatedly, during my su[mmation], interrupted it and said that there was a charge that there was no agreement that I should be paid.  And that is, factually, untrue."  Dkt. 20-2 at 342. Mitchell asked for "an opportunity, given the Court's interruption, to briefly address the jury again on summation regarding that point."  *Id.*  The court denied Mitchell's request, ordered that the jury be brought in, and began delivering its charge.  *Id.* at 343.

As relevant to the Petition, the court charged the jury that "[e]scrow violations and breaches of fiduciary duties are not crimes"; however, the court added, jurors could consider such violations as evidence of whether Mitchell had the intent to steal funds from Jacques's estate.  *Id.* at 355.  The court did not repeat its admonitions about the lack of evidence that Mitchell had permission to keep the $70,000.  Before the jury retired to deliberate, the court, outside the jury's presence, asked the parties

whether they had any exceptions to the charge.  *Id.* at 366.  Mitchell said he had "quite a

number of them."  *Id.*  Among other requests, he repeated his requests for a missing

witness charge and an instruction on claim-of-right, objected to the charge concerning

escrow violations because the Church Avenue Property was not sold under the 2006

Sales Contract, and repeated his objections to the instructions the court gave during his

summation.  *See id.* at 367-76.  Mitchell stated that "the Court bolstered the People's case

with the charges that they did yesterday."  *Id.* at 376.  The court responded:

> At sidebar, you came up during the course of this trial and told me that
> you wanted to get out the fact that you had done work for the estate on
> the element of your intent.  You turned that -- you twisted it and you
> turned it in summation into inviting the jury that, that is a defense in this
> case; that, they could consider your work in this case as a defense to the
> charge.  And, that's why I intervened with the jury yesterday.

*Id.* at 377.  The court denied all of Mitchell's exceptions and went on to say:

> I just want to make a record here in regard to these exceptions and what
> happened yesterday.
>
> On Thursday afternoon, I had proposed a charge that I was going to give
> to the jury.  I reconsidered that.  I spoke to Mr. Smallman, I spoke to the
> district attorney.  I told Mr. Smallman, if Mr. Mitchell intimates or says,
> during summation, that, the absence of the administrator or the lawyer for
> the administrator shows that he [had] permission or authority to keep the
> check, I will instruct the jury that there's no evidence in this case that the
> defendant had permission [or] authority from anyone to keep the
> proceeds of the check.  I made that known on Thursday afternoon.  In
> addition to that, I told Mr. Smallman if the defendant intimates or says
> that he had a legal right to keep the check, because of work done by him
> for his client and the estate, I will tell the jury, that, he had no such right
> under the law to do so, and, that, that is no defense to the charge of
> permanently keeping the check.  So, the defendant was on notice from his

> legal adviser, that, those arguments would be met by intervention of the
> Court before the jury.
>
> I will not allow the defendant to twist evidence, make uncharged justified
> claims, pervert the evidence in this case in my courtroom.  This is a trial,
> not a game of "How I get out of this." . . .
>
> And, again, I just want to repeat, at sidebar, the defendant asked me to
> allow him to use the prior work he had done for the estate only on the
> issue of intent.  He turned that around and during his summations he
> suggested, at least, if not outright said to the jury, that, this was a defense
> to his larceny.

*Id.* at 379-81.  Mitchell objected, stating that the court had mischaracterized what was in

evidence but not commenting on the court's remarks about earlier discussions.  *Id.* at

381-82.  The court denied his objection and said it was preserved for appeal.  *Id.* at 382.

The court brought the jurors back into the courtroom and directed them to begin

deliberating.  *Id.* at 383-84.[4]

Later that day, the jury returned a guilty verdict.  Dkt. 20 at 24; Dkt. 20-2

at 410.  Mitchell filed a motion to set aside the verdict, which the court denied.  Dkt. 20-3

---

[4]     In the Petition, Mitchell alleges he was excluded from a conference on January 27, 2015,
at which "the trial court made material changes to the jury instructions." Dkt. 14 at 28.  To the
extent the trial court's comments suggested that there had been a conference without Mitchell
being present, the trial court appears to have misspoken, as the prosecution explained in its
brief on direct appeal.  *See* Dkt. 20 at 27-28 ("The State pointed out the times and dates of the
trial transcripts in support of its position that defendant was actually present at the conference
at which the court personally warned him of the curative instructions that it would give. . . .
[D]efendant never protested that he was absent from that conference, or that counsel did not tell
him what the court warned (if he was absent).").  Moreover, the trial court referred to a
conference on "Thursday afternoon," Dkt. 20-2 at 379, and the pre-charge conference in which
Mitchell participated was held on January 22, 2015, a Thursday.  Mitchell's claim that he was
excluded from a conference held January 27, 2015, is belied by the fact that January 27 was a
Tuesday and no proceedings were held that day due to the snowstorm.  *Id.* at 332-33.

at 2-3.  On March 20, 2015, the court sentenced Mitchell to an indeterminate term of

imprisonment of two to six years; it did not impose a term of post-release supervision.

*See id.* at 13.  Mitchell's sentence was to run consecutively with an earlier sentence

imposed for a separate conviction for grand larceny in the second degree.  *Id.*; *see also*

Dkt. 20 at 24.[5]  The court also entered a civil judgment against Mitchell in the amount of

$70,000.  Dkt. 20-3 at 13.

### B.    *Post-Conviction Proceedings in State Court*

On September 20, 2017, Mitchell moved *pro se* to vacate the judgment of

conviction, pursuant to N.Y. Crim. Proc. Law § 440.10.  *See* Dkt. 20-4 at 3.  Mitchell

claimed that (1) he was denied a fair trial when the court refused to allow him to testify

in the manner that he wished; (2) the prosecution withheld *Brady* material from him; (3)

the prosecution knowingly presented false testimony and evidence to the grand jury;

and (4) the prosecution knowingly presented false testimony and documentary

evidence at trial as well.  *Id.* at 5-6; *see Brady v. Maryland*, 373 U.S. 83, 86 (1963).  In his

reply brief, Mitchell added that the evidence against him was insufficient because the

People failed to prove that Marie did not give Mitchell permission to keep the funds.

Dkt. 20-6 at 20.  On March 26, 2018, the court denied Mitchell's motion to vacate the

---

[5]      Mitchell's prior conviction was also for grand larceny in the second degree.  Like the
instant cases, that conviction arose out of Mitchell's wrongful retention of funds belonging to a
client.  The conviction was affirmed by the Appellate Division, *People v. Mitchell*, 136 N.Y.S.3d
101, 102 (2d Dep't 2020), and the Court of Appeals denied leave to appeal, *People v. Mitchell*, 167
N.E.3d 1247 (N.Y. 2021) (Stein, *J.*).

judgment because the evidence and trial record contradicted his allegations.  Dkt. 15-2 at 5-6.  As to the *Brady* violation claim, the court held that none of the documents Mitchell identified constituted *Brady* material and, even if they did, Mitchell had access to them and was free to introduce them at trial.  *Id.*

On May 14, 2018, Mitchell sought leave to appeal the denial of his Section 440 motion to the Appellate Division, Second Department.  Dkt. 20-8 at 3-4.  On June 27, 2018, the Appellate Division denied Mitchell leave to appeal.  Dkt. 20-10 at 1.  On September 28, 2018, the Court of Appeals dismissed Mitchell's application for leave to appeal.  *People v. Mitchell,* 111 N.E.3d 1120 (N.Y. 2018) (Wilson, J.) ("*Mitchell I*").

On July 28, 2018, Mitchell directly appealed the judgment of conviction to the Appellate Division, Second Department.  *See* Dkt. 20-11 at 1-4.  He contended that (1) the trial court violated his right to testify on his own behalf; (2) the trial court failed to charge the jury as to pertinent sections of the N.Y. Estates, Powers & Trusts Law; (3) the trial court improperly removed from the jury's consideration the question of whether Marie had authorized Mitchell to keep the funds; (4) the trial court failed to instruct the jury to consider Marie's absence as a witness; (5) the trial court failed to include Mitchell in a conference regarding the parameters of his summation; (6) the prosecution knowingly introduced false testimony at trial; (7) the prosecution failed to instruct the grand jury as to relevant sections of the N.Y. Estates, Powers & Trusts Law and knowingly presented false evidence and testimony to the grand jury; (8) the trial

18

court erroneously prevented Mitchell from cross-examining two witnesses about certain facts; (9) the People failed to establish that Mitchell lacked permission to keep the funds; and (10) his sentence was excessive.  *Id.* at 5-8.  In his reply brief, Mitchell added two related points:  (1) He had the right to assert he had permission to use the funds he held in escrow, and (2) Marie's absence as a witness created reasonable doubt as to Mitchell's guilt, thus precluding conviction.  *See* Dkt. 20-13 at 23, 26.

By decision dated November 18, 2020, the Appellate Division unanimously affirmed Mitchell's conviction.  *People v. Mitchell*, 136 N.Y.S.3d 98 (2d Dep't 2020) ("*Mitchell II*").  The Appellate Division held that the evidence supporting the conviction was legally sufficient to establish Mitchell's guilt beyond a reasonable doubt. *Id.* at 100.  Because Mitchell's claim that Marie gave him permission to use the escrowed funds was hearsay lacking "sufficient indicia of reliability to warrant admission" and Mitchell failed to demonstrate that Marie was unavailable to testify, the Appellate Division held the trial court did not deprive Mitchell of his constitutional right to present a defense when it precluded him from testifying as to statements allegedly made by Marie.  *Id.*  The Appellate Division concluded that the trial court "providently exercised its discretion in denying [Mitchell's] request for a missing witness charge."  *Id.* It also held that the trial court "did not err in declining to instruct the jury regarding certain provision[s] of the [N.Y. Estates, Powers & Trusts Law]."  *Id.* at 101.  The Appellate Division dismissed as meritless Mitchell's contention that the trial court

deprived him of his right to a fair trial by limiting his cross-examination of two witnesses because Mitchell's proposed "line of questioning was marginally relevant and posed a risk of confusing or misleading the jury." *Id.* Finally, the Appellate Division held that Mitchell's sentence was not excessive. *Id.* It dismissed his "remaining contentions" as "without merit." *Id.*

On March 31, 2021, the Court of Appeals denied Mitchell's application for leave to appeal. *People v. Mitchell*, 167 N.E.3d 1247 (N.Y. 2021) (Stein, J.) ("*Mitchell III*").

### C.   *Proceedings in Federal Court*

On June 26, 2019, proceeding *pro se*, Mitchell petitioned for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the Southern District of New York. Dkt. 14 at 2. The case was transferred to the Eastern District of New York, *see id.*, and on January 11, 2022, Mitchell filed an amended petition in this Court, *see* Dkt. 9. On May 18, 2022, he filed the Petition, raising the same (or similar) claims as he did in his Section 440 motion and his direct appeal to the Appellate Division. *See* Dkt. 14 at 1, 12, 15, 18, 22, 26, 29, 43, 45, 47. On February 15, 2023, Respondent filed its opposition to the Petition. *See* Dkt. 20. The Petition was reassigned to me on May 12, 2023.

On June 28, 2022, Mitchell filed, *pro se*, No. 22-cv-3791, a civil rights action pursuant to 42 U.S.C. § 1983, in which he alleged that, in connection with the criminal prosecution, the State of New York, the Office of the Kings County District Attorney, the Attorney General, and the District Attorney violated his rights under the Fifth, Sixth,

and Fourteenth Amendments to the U.S. Constitution.  Dkt. 1; *see also* No. 19-cv-3980,

Dkt. 27.  In his complaint in No. 22-cv-3791, Mitchell notes that he was discharged from

state parole supervision on June 17, 2020.  Dkt. 1 at 3.  His complaint seeks "federal

habeas corpus relief pursuant to 42 U.S.C. § 1983 in lieu of relief pursuant to 28 U.S.C.

§ 2254(d)(1) and 28 U.S.C. § 2254(d)(2)."  *Id.*

      The State Defendants moved to dismiss the complaint under Fed. R. Civ.

P. 12(b)(6).  *See* No. 22-cv-3791, Dkt. 13.  On December 9, 2022, this Court consolidated

Nos. 19-cv-3980 and 22-cv-3791 because "they share common issues of law and common

parties."  Minute Order of Dec. 9, 2022.  Defendant Gonzalez also indicated he intended

to file a motion to dismiss under Rule 12(b)(6).  *See* Dkt. 32 at 1.

      On March 10, 2023, Mitchell sought an order permitting him to conduct

discovery in the consolidated actions.  *See* No. 19-cv-3980, Dkt. 21.  Respondent to the

Petition opposed Mitchell's request.  *See* Dkt. 23.  On March 24, this Court referred

Mitchell's motion to Magistrate Judge Lois Bloom.  *See* Dkt. 27 at 2.  On May 2, 2023,

Judge Bloom denied Mitchell's motion to conduct discovery because a habeas petitioner

is not generally entitled to discovery.  *Id.*  Judge Bloom ordered that discovery in No.

22-cv-3791 be stayed pending the disposition of Defendants' motion to dismiss.  *Id.* at 3.

      On June 16, 2023, Mitchell filed, *pro se*, the complaint in No. 23-cv-4465,

which seeks habeas relief "pursuant to 42 U.S.C. § 1983 in the same manner as if the

Plaintiff was successful with a 28 U.S.C. § 2254 application" as well as monetary

damages.  No. 23-cv-4465, Dkt. 1 at 76-77.  Defendants in No. 23-cv-4465 have not yet entered their appearances.

On July 12, 2023, Nos. 22-cv-3791 and 23-cv-4465 were reassigned to me.

## DISCUSSION

All three of Mitchell's actions "involve a common question of law or fact," Fed. R. Civ. P. 42(a), namely, whether Mitchell's federal constitutional rights were violated in the course of his prosecution for grand larceny.  This Court previously consolidated Nos. 19-cv-3980 and 22-cv-3791 under Rule 42(a), and I now consolidate No. 23-cv-4465 with them.  I address, first, the claims in the Petition and, then, the claims in the Section 1983 actions.

## I.    *The Petition*

As a threshold matter, Mitchell appears to presume that the Petition is moot because he is "no longer . . . within the custody and control of the State of New York."  No. 22-cv-3791, Dkt. 1 at 3; No. 23-cv-4465, Dkt. 1 at 61.  A petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison, however.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *accord Levine v. Apker*, 455 F.3d 71, 76-77 (2d Cir. 2006).  Rather, the matter continues to present a live case or controversy if there remains "some concrete and continuing injury" despite the release, or, in cases where the petitioner challenges the conviction itself, if a "collateral consequence" will result from the conviction.  *Spencer*, 523 U.S. at 7.

The State Defendants have not argued that the Petition is moot, *see* No. 22-cv-3791, Dkt. 14, and it is apparent that the Petition is not moot, for Mitchell's conviction for grand larceny continues to present collateral consequences for him. Specifically, as I discuss below, the conviction prevents Mitchell from maintaining the civil rights actions he has brought in Nos. 22-cv-3791 and 23-cv-4465.

A.    *Federal Review of State Convictions*

As a threshold matter, 28 U.S.C. § 2254 provides that federal courts may review state-court convictions "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (citation and internal quotation marks omitted).

A federal court may not grant a habeas petition where the petitioner is in custody pursuant to a judgment of a state court unless the petitioner "has exhausted the remedies available in the courts of the State" or such process is unavailable or ineffective. 28 U.S.C. § 2254(b)(1)(A)-(B); *Jackson v. Conway,* 763 F.3d 115, 133 (2d Cir. 2014) ("[A] state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application.").

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law

ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citations omitted). That is, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is "'adequate to support the judgment.'" *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted). Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York laws governing a petitioner's failure to raise a claim on direct appeal "represent[] the application of a 'firmly established and regularly followed' New York rule." *Williams v. Goord,* 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003) (citations omitted).

Finally, a federal court may not grant a habeas petition as to a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

**B.    *Analysis***

Broadly speaking, the Petition raises four sets of claims: (1) the prosecution withheld exculpatory evidence from Mitchell and knowingly presented false testimony and evidence before the grand jury and at trial; (2) the court denied Mitchell a fair trial by, *inter alia*, refusing to let him testify that he had permission from Marie to use the funds and limiting the scope of cross-examination; (3) the court failed to instruct the jury to consider relevant state law and Marie's absence as a witness; and (4) the People failed to instruct the grand jurors who indicted Mitchell about relevant principles of state law.  *See* Dkt. 14 at 12, 15, 18, 22, 26, 29, 43, 45, 47.[6]

Mitchell has exhausted his state remedies as to all of his claims.  *See* 28 U.S.C. § 2254(b)(1)(A).  He included each claim in his direct appeal to the Appellate

---

[6]    This summary and the ensuing discussion groups, for clarity's sake, the nine grounds enumerated in the Petition.  Mitchell's prosecutorial misconduct claim comprises ground VI of the Petition, in which he contends that the People violated his Sixth and Fourteenth Amendment rights by withholding exculpatory evidence and knowingly eliciting false testimony.  *See* Dkt. 14 at 29-43.  Mitchell's fair trial claim encompasses grounds I, II, V, VIII, and IX of the Petition, which concern the scope of Mitchell's trial testimony, Mitchell's alleged exclusion from a pre-charge conference, and limitations the trial court placed on Mitchell's ability to cross-examine two witnesses.  *See id.* at 12-18, 26-29, 45-48.  Mitchell's claim about the jury charge encompasses grounds III and IV of the Petition, which relate to elements of the jury charge concerning Mitchell's claim of right defense and the authority of estate representatives under the N.Y. Estates, Powers & Trusts Law.  *See id.* at 18-26.  Finally, Mitchell's claim about the grand jury comprises ground VII of the Petition.  *See id.* at 43-44.

Division.  *See* Dkt. 20-11 at 5-7.  The Appellate Division denied his claims on the merits,

*see Mitchell II*, 136 N.Y.S.3d at 100-01, and the Court of Appeals denied leave to appeal,

*see Mitchell III*, 167 N.E.3d at 1247.  I therefore accord the state courts' holdings

"substantial deference."  *Fischer*, 780 F.3d at 560.  I address each group of claims in turn.[7]

       1.     *The Prosecutorial Misconduct Claim*

       According to Mitchell, the prosecution (1) committed *Brady* violations by

withholding exculpatory documents; (2) falsely asserted that the 2006 Sales Contract

was the operative contract for the sale of the Church Avenue Property and elicited

testimony based on that premise; and (3) falsely claimed that Marie was not a material

witness, despite the fact that she signed the 2007 Sales Contract.  Dkt. 14 at 32-36, 41.

These arguments do not entitle Mitchell to habeas relief.

       Under the Sixth and Fourteenth Amendments to the U.S. Constitution, the

prosecution may not suppress evidence favorable to a defendant, including evidence

that could be used to impeach adverse witnesses, when such evidence is material to a

defendant's guilt.  *See Brady*, 373 U.S. at 87; *United States v. Madori*, 419 F.3d 159, 169 (2d

Cir. 2005).  A *Brady* violation occurs when (1) material evidence was "'favorable to the

accused, either because it is exculpatory, or because it is impeaching'"; (2) the evidence

---

[7]     As I discuss further below, the analysis in this section of this Opinion applies with equal
force to Mitchell's claims in No. 22-cv-3791 and to the claims contained in the third through
sixth causes of action of the complaint in No. 23-cv-4465, all of which duplicate, at least in part,
the claims contained in the Petition.

was "'suppressed by the State, either willfully or inadvertently'"; and (3) prejudice

ensued. *Madori*, 419 F.3d at 169 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

A conviction obtained through the knowing use of false testimony or false

evidence is "fundamentally unfair." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see*

*also Drake v. Portuondo*, 553 F.3d 230, 241 (2d Cir. 2009). A petitioner claiming to have

been wrongfully convicted for this reason must establish that "(1) there was false

testimony, (2) the Government knew or should have known that the testimony was

false, and (3) there was 'any reasonable likelihood that the false testimony could have

affected the judgment of the jury.'" *United States v. Helmsley*, 985 F.2d 1202, 1205-06 (2d

Cir. 1993) (quoting *Agurs*, 427 U.S. at 103).

Here, it was not unreasonable for the Appellate Division to conclude that

Mitchell's contentions of prosecutorial misconduct were meritless. *See Mitchell II,* 136

N.Y.S.3d at 101. First, there could not have been a *Brady* violation because the People

turned over to Mitchell all the material he claims to be exculpatory, including the 2007

Sales Contract and a motion to compel the sale of the Church Avenue property

prepared and signed by Falcone's attorney, Daniel Miller. Indeed, at trial, Mitchell

acknowledged he had received copies of the documents he names in the Petition. *See*

Dkt. 20-2 at 397.

Second, the prosecutor's claim that the 2006 Sales Contract was the

operative contract, as well as the prosecutor's solicitation of testimony to that effect, do

not rise to the level of fundamental unfairness because there was no risk the minor

inaccuracy would have affected the jury's judgment. *See Helmsley*, 985 F.2d at 1205. The

authenticity of the 2006 Sales Contract was undisputed. Nothing in the record indicates

that witnesses' testimony regarding the terms of the 2006 Sales Contract was false.

Although the Church Avenue Property was ultimately sold under the 2007 Sales

Contract, the 2006 Sales Contract initiated the sale, gave rise to Falcone's obligation to

make the $70,000 down payment, and required that Mitchell hold the down payment in

escrow. Dkt. 20-1 at 911-13. The 2007 Sales Contract, to which Marie rather than Jean

was a party, did not materially modify the terms of the sale. *See* Dkt. 20-2 at 204-05.

Nor did the 2007 Sales Contract alter Mitchell's obligations with respect to the $70,000

he was holding in escrow. And nothing in the record supports a finding that Marie, or

for that matter anyone, granted Mitchell authority to use the escrowed funds.

Third, I discuss and reject below Mitchell's claim that Marie was a material

witness; therefore, it was not misconduct for the prosecutor to oppose Mitchell's

arguments about Marie's role in the case.

For all these reasons, Mitchell's prosecutorial misconduct claim fails.

2.      *The Fair Trial Claim*

Nor is Mitchell entitled to habeas relief based on his claim that the court

violated his right to a fair trial. According to Mitchell, the trial court erred in three

respects: (1) it improperly refused to permit Mitchell to testify he had Marie's

28

permission to keep the down payment, Dkt. 14 at 13-18; (2) it improperly limited

Mitchell from cross-examining Miller about the 2007 Sales Contract and from cross-

examining Jean about funds Jean took from the estate, *id.* at 45-48; and (3) it excluded

Mitchell from a pre-charge conference at which the court warned it would give the jury

a curative instruction if Mitchell argued in summation that Marie had given him

permission to retain the down payment, *id.* at 26-29.[8]

       The Appellate Division rejected Mitchell's arguments, holding that his

proposed hearsay testimony that he had Marie's permission to retain the down

payment lacked "sufficient indicia of reliability" and that Mitchell had failed to

demonstrate that Marie was unavailable to testify. *Mitchell II*, 136 N.Y.S.3d at 100. In

addition, the Appellate Division held that the trial court properly limited Mitchell's

cross-examination of Miller and Jean because the risk of confusing or misleading the

jury outweighed the probative value of the testimony Mitchell sought to elicit. *Id. at*

101. Last, the Appellate Division found Mitchell's claim that he had been excluded from

a pre-charge conference meritless. *Id.*

       State courts' evidentiary rulings are generally not a basis for federal

habeas relief. *See Vega*, 669 F.3d at 126; *see also Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991) (emphasizing that "it is not the province of a federal habeas court to reexamine

---

[8]     These arguments appear in grounds I, II, V, VIII, and IX of the Petition. I have grouped
them in this manner for clarity's sake.

state-court determinations on state-law questions").  To prevail on a claim that a state court's evidentiary ruling deprived him of due process, a habeas petitioner must demonstrate that the error "was so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

a.      Limitations on Mitchell's Testimony

Here, the Appellate Division reasonably concluded that the trial court properly limited Mitchell's testimony.  His proposed testimony that Marie gave him permission to keep the down payment was inadmissible hearsay.

First, the proposed testimony was indeed hearsay.  Mitchell indicated he intended to testify to what Marie said to him to prove he had her permission to keep the down payment.  *See, e.g.*, Dkt. 20-2 at 129.  The purported statement was an out-of-court declaration (made by Marie, who was not present to testify) offered for the truth of the matter asserted therein (that she gave Mitchell permission).  *See, e.g., People v. Caviness*, 342 N.E.2d 496, 498-99 (N.Y. 1975).

Second, the proposed testimony was hearsay not subject to any exception recognized by New York courts.  Mitchell argued that Marie's statement was an "admission" that was "against pecuniary interest."  Dkt. 20-2 at 129.  New York has long held that hearsay statements against a declarant's penal, pecuniary, and proprietary interests may be admissible because "a person ordinarily does not reveal facts that are contrary to his own interest unless those facts are true." *People v. Soto*, 44 N.E.3d 930,

933-34 (N.Y. 2015) (citations and internal quotation marks omitted).  "A statement qualifies as a declaration against interest if four elements are met:  (1) the declarant is unavailable to testify as a witness; (2) when the statement was made, the declarant was aware that it was adverse to his or her penal interest; (3) the declarant has competent knowledge of the facts underlying the statement; and (4) supporting circumstances independent of the statement itself attest to its trustworthiness and reliability."  *Id.* (citation omitted).[9]

        Marie's purported declaration fails at least two of these prongs.  On the one hand, Mitchell failed to prove Marie was unavailable to testify.  *See, e.g.*, *People v. Hayes*, 950 N.E.2d 118, 123 (N.Y. 2011) ("While a defendant has a constitutional right to present a defense, [such right] does not give the defendant carte blanche to circumvent the rules of evidence." (internal quotation marks omitted)); *see also* Guide to N.Y. Evid. Rule 8.01(1)(b).[10]  Indeed, the trial court offered to sign a subpoena *ad testificandum* for Marie, but Mitchell declined the court's offer.  Dkt. 20-1 at 606.

---

[9]        The trial court misapprehended which hearsay exception Mitchell claimed Marie's statement satisfied.  In declining Mitchell's request to testify, the court concluded that Marie's statement was inadmissible hearsay because it was a party-admission made on behalf of Jacques' estate and the estate was not a party to the case.  Dkt. 20-2 at 140.  Even though the court was mistaken, the error was harmless because, for the reasons given below, Marie's statement was also inadmissible under the exception for statements against pecuniary interest.
[10]       The bulk of New York's rules of evidence are not established by statute.  The Guide to New York Evidence is a persuasive authority published by New York's Unified Court System at http://www.nycourts.gov/JUDGES/evidence/.

On the other hand, as the Appellate Division held, there were no circumstances corroborating the declaration's trustworthiness and reliability. *See Mitchell II*, 136 N.Y.S.3d at 101. In fact, the testimony Mitchell proposed to offer would have contradicted both the record and common sense. When Jean and Bischof asked Mitchell to remit the $70,000, he did not tell them Marie had given him permission to keep it. *See* Dkt. 20-1 at 375, 380-81; Dkt. 20-2 at 31. Although Marie did not direct her attorney, Abakporo, to recover the down payment from Mitchell, Dkt. 20-1 at 455, that omission is not proof she had authorized Mitchell to keep the money. Marie took no steps to recover the funds because Jean, as the property manager, had that responsibility. *Id.* at 450-51. And other facts adduced at trial showed that Mitchell did not have permission to keep the funds because he attempted to conceal his misappropriation of them. If he had had permission, he would not have told Jean he would bring a check to the closing, nor would he have placed a stop-payment order on the check he eventually gave Jean. *See id.* at 666-68. He certainly would not have placed the stop-payment order a month before giving Jean the check. *See id.* In short, none of Mitchell's conduct is consistent with the hearsay testimony he proposed to provide. The trial court's exclusion of his testimony was wholly reasonable.

b.      The Scope of Mitchell's Cross-Examinations

Separately, it was also not unreasonable for the Appellate Division to hold that the trial court properly limited Mitchell's cross-examination of Miller and Jean. Because the 2006 Sales Contract governed the handling of the funds in escrow, questions about extraneous facts regarding the 2007 Sales Contract may have misled or confused the jury.  Under New York law, a trial court has broad discretion over the scope and manner of examining witnesses, including the discretion to conclude that the probative value of evidence is substantially outweighed by dangers such as jury confusion.  *See Bernstein v. Bodean*, 426 N.E.2d 741, 745 (N.Y. 1981); *People v. Smith*, 57 N.E.3d 53, 58 (N.Y. 2016) ("[I]n all cases the trial court retains broad discretion to weigh the probative value of evidence . . . against the possibility that it would confuse the main issue and mislead the jury" (internal quotation marks omitted)).

c.      Mitchell's Alleged Exclusion from a Pre-Charge Conference

Mitchell's argument about his alleged exclusion from a conference about the court's charge to the jury -- that, because he was excluded, he was not informed of the court's plan to give a curative instruction if he argued in summation that Marie gave him permission to keep the down payment -- is factually incorrect.  As I discussed above, it is clear that the trial court did not confer about the jury charge with Mitchell's standby counsel and the prosecutor outside Mitchell's presence.  *See supra* n.4.  On the date when Mitchell alleges the conference took place, no proceedings were held because

of a snowstorm that led the administrative judge to close the courts. *See id.* Moreover, the record is indisputably clear that Mitchell was present at the conference on January 22, where the court admonished him that if he were to suggest, during his summation, that either evidence in the case or the absence of a witness "shows that you had permission and authority" to keep the down payment, "I'm going to jump in" and charge the jury that there was no evidence to that effect. Dkt. 20-2 at 232; *see also id.* at 228. There is no transcript of any pre-charge conference where standby counsel appeared without Mitchell. In addition, even though Mitchell objected contemporaneously to the court's remarks to the jury, he did not claim at the time that he had been excluded from any conference, his standby counsel had failed to communicate the court's admonitions to him, or he had been prejudiced as a result. Thus, it was reasonable for the Appellate Division to dismiss Mitchell's claim about the pre-charge conference as meritless.

For all the foregoing reasons, Mitchell's arguments that he was deprived of a fair trial do not merit federal habeas relief.

3.      *The Jury Charge Claim*

Finally, Mitchell claims that the "trial court's charge precluded the jury from considering relevant law and material evidence that established that [he], in fact, had a legal right to collect and keep the seventy thousand dollars at issue." Dkt. 14 at 23. Mitchell alleges that N.Y. Est. Powers & Trusts Law §§ 11-1.1(b)(13), (22) allowed

34

Marie, in her capacity as administrator of Jacques's estate, to pay attorneys' fees without the Surrogate's Court's approval. *Id.* at 19. As I noted above, neither the People nor Mitchell called Marie to testify at trial, and the trial court reasonably precluded Mitchell from testifying that Marie gave him permission to keep the money. *See* Dkt. 20-1 at 603-07. The court also denied Mitchell's request for a missing witness charge. *See* Dkt. 20-2 at 222-24. In connection with these events, Mitchell argues that the trial court denied him due process by "instruct[ing] the jurors to ignore material aspects of law and fact in favor of the defense." Dkt. 14 at 24.

The Appellate Division held that, reviewing the charge as a whole, the trial court "did not err in declining to instruct the jury regarding certain provision[s] of the [N.Y. Estates, Powers & Trust Law]." *Mitchell II*, 136 N.Y.S.3d at 101. The Appellate Division concluded that the trial court also "providently exercised its discretion in denying the defendant's request for a missing witness charge" because Mitchell failed to show that Marie was under the People's control; moreover, Mitchell had an opportunity in his summation to draw attention to the People's failure to call Marie as a witness, even though the court properly prohibited him from asserting that Marie's absence proved that she had given him permission to keep the $70,000. *Id.* at 100.

"A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." *United States ex rel.*

*Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir. 1974) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed . . . by the Fourteenth Amendment.")).  For an erroneous jury instruction to successfully support a collateral attack on the validity of a state court judgment, a petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp,* 414 U.S. at 147.  Thus, even where error is found in a state court's jury charge, the error is harmless unless it results in "actual prejudice" -- that is, unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (citations and internal quotation marks omitted).  But if the trial record is "so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error," the petitioner must prevail.  *O'Neal v. McAninch,* 513 U.S. 432, 437 (1995).

   Here, as I have described above, the record was replete with evidence of Mitchell's guilt.  Even if that were not the case, the instructions Mitchell challenges were not erroneous.

   First, it was not unreasonable for the Appellate Division to hold it was within the trial court's discretion to deny a missing witness charge.  Marie was not a

material witness because it was Jean, not Marie, who hired Mitchell and was

responsible for paying him.  *See* Dkt. 20-2 at 17.  Most importantly, the record does not

contain admissible evidence that Marie had any dealings with Mitchell or the $70,000

check, *see id.* at 33-34, or that she granted Mitchell permission to keep the escrow funds,

*see, e.g.*, Dkt. 20-1 at 908-14.  "In fact," as the trial court observed, Mitchell was "hostile to

Marie."  Dkt. 20-2 at 125.  Thus, the court's denial of a missing witness instruction was

not erroneous.  *See People v. Gonzalez*, 502 N.E.2d 583, 586 (N.Y. 1986) (holding that a

missing witness charge would be appropriate if it is natural to expect the party to have

called the witness to testify in his favor and the party can produce such witness); *People*

*v. Smith*, 128 N.E.3d 649, 653 (N.Y. 2019) (holding that the proponent of a missing

witness instruction must demonstrate that (1) the uncalled witness is "knowledgeable

about a material issue" in the case, (2) "such witness can be expected to testify favorably

to the opposing party," and (3) the opposing party has failed to call the witness to

testify); *see also* Guide to N.Y. Evid. Rule 6.10.1.

        Second, the Appellate Division also reasonably held it was not erroneous

for the trial court to decline Mitchell's request to instruct the jury about provisions of

the N.Y. Estates, Powers & Trusts Law.  The provisions Mitchell cites, §§ 11-1.1(b)(13),

(22), concern an administrator's role in paying an estate's expenses.  In contrast, the

funds Mitchell held in escrow were governed not by the N.Y. Estates, Powers & Trusts

Law but by the terms of the 2006 Sales Contract.  That agreement provided that Mitchell

would hold the $70,000 down payment in his attorney escrow account until either the sale closed or the contract was terminated.  Dkt. 24 at 17.  The contract did not authorize any other use of the escrowed funds.  *Id.*  Therefore, the provisions as to which Mitchell requested the jury be instructed were not relevant, and the court's refusal to provide the requested instruction was not erroneous.[11]

Even assuming the trial court should have instructed the jury on provisions of the N.Y. Estates, Powers & Trusts Law, however, such error was harmless because Mitchell has not shown -- and, given the weight of the evidence against him, could not show -- that it "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  At trial, no testimony or documentary evidence indicated that Marie, as administrator of Jacques's estate, gave Mitchell permission to keep the $70,000 down payment.

Therefore, Mitchell's jury charge claim fails.

4.    *The Grand Jury Claim*

Finally, Mitchell claims that the People failed to instruct the grand jurors who returned the indictment against him as to the same provisions of the N.Y. Estates, Powers & Trusts Law, as well as to whether the 2006 Sales Contract or the 2007 Sales

---

[11]    Moreover, as a matter of both law and professional ethics, an attorney acting as an escrow agent has a fiduciary duty to his client.  *See* N.Y. Gen. Oblig. Law § 5-1505; *see also* N.Y. R. Prof. Conduct 1.15(a).  Money held in an escrow account belongs to the client, and the attorney must not misappropriate or commingle such funds.  N.Y. R. Prof. Conduct 1.15(a).

Contract was the operative contract for the sale of the Church Avenue Property.  *See* Dkt. 14 at 43-44.  The Appellate Division held that this claim was "without merit."  *Mitchell II*, 136 N.Y.S.3d at 101.

Mitchell's claim about the grand jury is not reviewable because claims concerning alleged defects in a grand jury proceeding "may not be raised" on federal habeas review "where a properly instructed petit jury heard all relevant evidence and convicted."  *Lopez v. Riley*, 865 F.2d 30, 31 (2d Cir. 1989).  Even were Mitchell's claim reviewable, however, it fails on the merits.  As I have described above, the provisions of the N.Y. Estates, Powers & Trusts Law Mitchell cites are not relevant to the charge on which the grand jury indicted him.  Mitchell's obligations with regard to the $70,000 down payment arose out of the 2006 Sales Contract, even though it was not the contract under which the Church Avenue Property was ultimately sold.

In sum, because the Petition contains no grounds for federal habeas relief, it, as amended, must be denied.

## II.    *Mitchell's Claims in No. 22-cv-3791*

In No. 22-cv-3791, Mitchell brings claims under 42 U.S.C. § 1983 against the State Defendants, Kings County District Attorney Eric Gonzalez, and the Kings County District Attorney's Office.  Dkt. 1 at 1.  His complaint seeks "federal habeas corpus relief pursuant to 42 U.S.C. § 1983 in lieu of relief pursuant to 28 U.S.C. § 2254(d)(1) and 28 U.S.C. § 2254(d)(2)."  *Id.* at 3.  Mitchell "asks this court for all

equitable and injunctive relief he is entitled [to] pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2254, including and not limited to an order directing the respondents to vacate and expunge the aforesaid conviction." *Id.* at 36.  The complaint in No. 22-cv-3791 does not seek monetary damages.  For the reasons that follow, the State Defendants' motion to dismiss is granted, and the complaint is dismissed as to all Defendants.

As a threshold matter, the Supreme Court has long held that Section 1983 is not the appropriate vehicle through which to seek federal review of a state criminal conviction.  *See Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973).  "Despite its literal applicability . . . § 1983 must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (citing *Preiser*, 411 U.S. at 489).  Moreover, where a plaintiff's success in a Section 1983 action "would necessarily demonstrate the invalidity of confinement or its duration," it is barred.  *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Heck v. Humphrey*, 512 U.S. 477 (1994).

Although Mitchell is a *pro se* litigant, he is also a disbarred attorney.  As the Second Circuit has observed in another case concerning Mitchell, "[a]lthough a court 'is ordinarily obligated to afford a special solicitude to *pro se* litigants,' that rule does not apply where, as here, a person trained as a lawyer represents himself." *Mitchell v. Con Edison*, 531 F. App'x at 141 (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010)).  I

therefore decline to afford Mitchell's *pro se* complaints any special solicitude.  *Cf. United States v. Pierce*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (summary order).

   Even were I to treat the complaint in No. 22-cv-3791 as a petition for a writ of habeas corpus, it would fail for the same reasons as the Petition itself.  The eight grounds Mitchell enumerates in the complaint are wholly duplicative of grounds contained in the Petition.  Grounds I and II of the complaint concern the scope of Mitchell's trial testimony (corresponding to Grounds I and II of the Petition).  *Compare* No. 19-cv-3980, Dkt. 14 at 12-18 *with* No. 22-3791, Dkt. 1 at 13-19.  Grounds III and IV of the complaint concern alleged errors in the jury charge (corresponding to Grounds III and IV of the Petition).  *Compare* No. 19-cv-3980, Dkt. 14 at 18-26 *with* No. 22-3791, Dkt. 1 at 19-27.  Ground V of the complaint concerns the pre-charge conference (corresponding to Ground V of the Petition).  *Compare* No. 19-cv-3980, Dkt. 14 at 26-29 *with* No. 22-3791, Dkt. 1 at 27-30.  Ground VI of the complaint concerns the People's alleged errors in the procurement of Mitchell's indictment (corresponding to Ground VII of the Petition).  *Compare* No. 19-cv-3980, Dkt. 14 at 43-44 *with* No. 22-3791, Dkt. 1 at 30-32.  Finally, Grounds VII and VIII of the complaint concern the scope of Mitchell's cross-examination of the same two witnesses, Miller and Jean, whose testimony he discusses in the Petition (corresponding to grounds VIII and IX of the Petition).  *Compare* No. 19-cv-3980, Dkt. 14 at 45-48 *with* No. 22-cv-3791, Dkt. 1 at 32-36.

The complaint must be dismissed for other reasons as well.  Collateral estoppel bars Mitchell's claims to the extent that he previously litigated them before the state trial and appellate courts because the issues are the same, Mitchell had a "full and fair opportunity" to litigate them, and the "resolution of the issue[s] was necessary to support a valid and final judgment on the merits."  *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotation marks omitted).  As the State Defendants properly argue in their motion to dismiss, although Mitchell "did not agree with the outcome of those proceedings, he cannot relitigate those issues in federal court, hoping for a different result."  No. 22-cv-3791, Dkt. 14 at 13.  Moreover, under the *Rooker-Feldman* doctrine, it is inappropriate for a federal court to review a state court judgment where (1) a plaintiff who did not prevail in state court (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered.  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  All these elements are present here, and Mitchell's complaint runs headlong into "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Id.* at 84; *see also Green v. Mattingley*, 585 F.3d 97, 101 (2d Cir. 2009).

Because the complaint in No. 22-cv-3791 must be dismissed for these reasons, I need not reach the State Defendants' further arguments that the complaint

must be dismissed as to them because (1) Mitchell has not established the causation and redressability prongs of Article III standing, (2) they are not proper parties because Mitchell has pled no facts connecting the State Defendants with alleged violations of federal law, and (3) the State of New York enjoys sovereign immunity and has not consented to being sued.  *See* Dkt. 14 at 9-12.

III.    *Mitchell's Claims in No. 23-cv-4465*

Finally, in No. 23-cv-4465, Mitchell brings suit under 42 U.S.C. § 1983 against three defendants not named in No. 22-cv-3791: the City of New York; Patrick Cappock, the prosecutor at Mitchell's trial; and Daniel Miller, Falcone's attorney and a witness at Mitchell's trial.  *See* Dkt. 1 at 1-2.  As in No. 22-cv-3791, Mitchell's prayer for relief requests that this Court "grant relief . . . in the same manner as if the Plaintiff was successful with a 28 U.S.C. § 2254 application" and, specifically, order "the municipal defendant to vacate the conviction and defund any effort by the [District Attorney's Office] to re-try the Plaintiff."  *Id.* at 77.  Unlike in No. 22-cv-3791, however, in No. 23-cv-4465, Mitchell seeks both injunctive relief and monetary damages.  *Id.* at 76.

The complaint in No. 23-cv-4465 contains six causes of action, four of which cover the same ground as claims in Mitchell's two other cases.  Mitchell's third and fourth causes of action, in which he alleges that Miller knowingly testified falsely about the contracts of sale for the Church Avenue Property, concern the same testimony as ground VIII of the Petition and ground VII of Miller's complaint in No. 22-cv-3791.

*See* No. 23-cv-4465, Dkt. 1 at 57-59.  The fourth cause of action is styled as a violation of Mitchell's *Brady* rights, which duplicates part of ground VI of the Petition.  *Compare id.* at 58-59 *with* No. 19-cv-3980, Dkt. 14 at 31-34.  The fifth cause of action alleges that Cappock, the prosecutor, also violated Mitchell's *Brady* rights by failing to disclose to him the 2007 Sales Contract and by portraying the 2006 Sales Contract as the operative agreement for the sale of the Church Avenue Property.  No. 23-cv-4465, Dkt. 1 at 59-61.  This claim, too, duplicates elements of ground VI of the Petition.  *See* No. 19-cv-3980, Dkt. 14 at 29-43.  The sixth cause of action, which Mitchell frames as an "application for a writ of habeas corpus," also concerns Miller's testimony and the 2007 Sales Contract. No. 23-cv-4465, Dkt. 1 at 64-76.

   The complaint contains two other causes of action, both of which Mitchell brings against the City of New York for alleged misconduct by Kings County prosecutors.  *See id.* at 51-57.  Mitchell advances both of these causes of action under the theory of municipal liability established by the Supreme Court in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  In the first cause of action, Mitchell alleges that prosecutors deliberately misled the grand jury and employed "outrageous, unlawful, and unethical tactics" during trial, Dkt. 1 at 54, and the City of New York is liable because the Kings County District Attorney is a city policymaker, the prosecutors' misconduct was a policy, custom, and practice of the District Attorney's Office, *see id.*, and the District Attorney and his successors were "deliberately indifferent" to violations of numerous

defendants' constitutional rights, *id.* at 55.  In the second cause of action, Mitchell alleges a violation of the Equal Protection Clause because, he asserts, the prosecutors' "tactics overwhelmingly are used against African-American men by the Defendants."  *Id.* at 56. Mitchell's complaint lists numerous cases in which courts have found Kings County prosecutors committed misconduct of the variety he alleges happened in his case.  *See id.* at 37-50.

For several interrelated reasons, Mitchell's complaint must be dismissed. First, inasmuch as Mitchell seeks vacatur of his conviction, a Section 1983 action is an improper vehicle for the reasons I have given above.  Second, to the extent that Mitchell is seeking monetary damages, his *Monell* claims and his sixth cause of action -- and likely his claims against Cappock and Miller as well -- are barred by *Heck* and its progeny because "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.  Third, as a prosecutor, Cappock is absolutely immune from suit for damages because the conduct Mitchell's complaint challenges was all "intimately associated with the judicial phase of the criminal process." *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022).  Fourth, as a trial witness, Miller is absolutely immune from suit for damages "with respect to *any* claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).

45

I do not lightly dismiss a complaint that no defendant has yet answered. Nevertheless, as I have described above, Mitchell's *pro se* filing is due no special solicitude.  His claims are clearly barred under a variety of legal doctrines and are, in large part, duplicative of claims that Respondent in No. 19-cv-3980 and the State Defendants in No. 22-cv-3791 have answered.  Therefore, because district courts are "capable of determining when an action is frivolous" and have "inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources," *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000), Mitchell's complaint in No. 23-cv-4465 is dismissed on the Court's own motion.

## CONCLUSION

The Court therefore orders as follows:

1.      Pursuant to Fed. R. Civ. P. 42(a), No. 23-cv-4465 is CONSOLIDATED with Nos. 19-cv-3980 and 22-cv-3791.

2.      As to No. 19-cv-3980, Mitchell has failed to show any basis for relief under 28 U.S.C. § 2254.  Accordingly, the Petition, as amended, is DENIED. Additionally, I decline to issue a certificate of appealability because Mitchell has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

3.      As to No. 22-cv-3791, the State Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), Dkt. 13, is GRANTED.  Moreover, because all Mitchell's claims in No. 22-cv-3791 are procedurally barred, the action is DISMISSED on the Court's own motion as to all other Defendants.

4.      No. 23-cv-4465 is likewise DISMISSED on the Court's own motion.

The Clerk of the Court shall enter judgment accordingly in each case and close each case.  The Clerk shall also mail copies of this Opinion and the judgments to Mitchell at his last known address.

SO ORDERED.

Dated:      New York, New York
            July 28, 2023

                                        /s/ DC
                            _____
                            DENNY CHIN
                            United States Circuit Judge
                            Sitting by Designation